**AIKEN SCHENK HAWKINS & RICCIARDI P.C.**
4742 North 24ᵗʰ Street
Suite 100
Phoenix, Arizona 85016-4859
Telephone: (602) 248-8203
Facsimile: (602) 248-8840
D. Lamar Hawkins – 013251
Philip R. Rupprecht - 009288
Christopher R. Chicoine – 025260
E-Mail: dlh@ashrlaw.com
E-Mail: prr@ashrlaw.com
E-Mail: crc@ashrlaw.com
Attorneys for Debtor

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SHAWN BURGUENO,<br><br>        Debtor.<br><br>Address:    1141 E. Tuckey Ln.<br>              Phoenix, AZ 85014<br><br>Soc.Sec.No.: xxx-xx-3030 | Chapter 11 Proceedings<br><br>Case No. 2:09-bk-10375-RJH<br><br>**DEBTOR'S FIRST DISCLOSURE STATEMENT** |

### I.  INTRODUCTION

This document is the disclosure statement of the Debtor, Shawn Burgueno ("Debtor"), in the above entitled Chapter 11 bankruptcy proceeding. This Disclosure Statement is submitted by the Debtor pursuant to 11 U.S.C. §1125.

11 U.S.C. §1125(b) prohibits the solicitation of acceptances or rejections of a plan of reorganization unless such plan is accompanied by a copy of the Disclosure Statement which has been approved by the Bankruptcy Court.

The purpose of this Disclosure Statement is to provide creditors and interested parties in this bankruptcy proceeding with such information as may reasonably be deemed sufficient to allow creditors and interested parties to make an informed decision regarding the Debtor's Plan of Reorganization ("Plan"), a copy of which is attached hereto and incorporated herein as Exhibit "A".

Unless otherwise noted, those portions of the Plan and this Disclosure Statement providing factual information concerning the Debtor, his assets and liabilities, have been prepared from

information submitted by the Debtor and his retained professionals. The Debtor and other professionals employed by the Debtor have utilized all relevant, non privileged information provided by the Debtor in preparing this Disclosure Statement and the Plan.

This Disclosure Statement contains information that may influence your decision to accept or reject the Debtor's proposed Plan. Please read this document with care.

The financial information contained in this Disclosure Statement has not been subjected to an audit by an independent certified public accountant. For that reason, the Debtor is not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy. To the extent practicable, the information has been prepared from the Debtor's financial books and records and great effort has been made to ensure that all such information is fairly representative.

This Disclosure Statement and the Plan will classify all creditors into Classes. The treatment of each Class of creditors will be set forth in this Disclosure Statement and in the Plan. You should carefully examine the treatment of the Class to which your Claim will be assigned.

This Disclosure Statement requires approval by the Bankruptcy Court after notice and a hearing pursuant to 11 U.S.C. §1125(b). Once approved, the Disclosure Statement will be distributed with the Debtor's proposed Plan for voting. Approval of the Disclosure Statement by the Bankruptcy Court does not constitute either certification or approval of the Debtor's Plan by the Bankruptcy Court or that the Disclosure Statement is without any inaccuracy.

The Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the Bankruptcy Code are satisfied. The Bankruptcy Court must determine whether the Plan has been accepted by each impaired class entitled to vote on the Plan. Impaired classes entitled to vote on the Plan are those classes of claims whose legal, equitable or contractual rights are altered, as defined under Section 1124 of the Bankruptcy Code. An impaired class of claims is deemed to have accepted the Plan if at least two thirds in amount of those claims who vote and more than one half in number of those claims who vote have accepted the Plan. An impaired class of interests is deemed to have accepted the Plan if the Plan has been accepted by at least two thirds in amount of the allowed interests who vote on the Plan.

Even if each class of creditors does not accept the Plan, the Plan can be confirmed under §1129(b) of the Code, so long as one impaired class of creditors accepts the Plan. This is referred to

as the "cram down" provision. The failure of each class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11, and the secured creditors repossessing its collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured creditors.

Only the votes of those creditors or interested parties whose ballots are timely received will be counted in determining whether a class has accepted the Plan.

## II.    DEFINITIONS

The definitions set forth in Article I of the Plan apply in this Disclosure Statement except to the extent other definitions are set forth in this Disclosure Statement.

## III.    THE DEBTOR AND EVENTS PRECIPITATING THE CHAPTER 11

The Debtor is a single man residing in Maricopa County, Arizona. The Debtor has been employed as a loan officer with US Capital Mortgage for approximately eight years. The Debtor owns seven real properties (collectively the "Properties"). All of the Properties except the Debtor's primary residence and one vacant lot in Sedona, Arizona, are residential income properties.

The Debtor was previously very successful in purchasing, selling, and holding for rent numerous houses. As the real estate market declined, the Debtor's ability to have positive cash flow on the rental properties declined. The Debtor began negotiations with his various lenders on the rental properties to modify loan terms so that the rentals could remain positive in their cash flow. Some lenders were willing to work with the Debtor, many were not. The Debtor worked hard to continue to service the secured debts, but ultimately the negative cash flow depleted the Debtor's resources. Ultimately as the real estate market crashed, the Debtor's ability to obtain loan modifications and continue to service the debt became a serious problem. Given the downturn of the real estate market, it is potential that all of the rental properties are worth less than the amounts owing on the loans and the rental income is not sufficient to cover the secured debt without obtaining modifications. The Debtor's Plan seeks the necessary modifications so that all of the rental properties will cash flow while servicing the modified debt.

To add to his difficulties, the Debtor's employment as a loan officer has been dependent on the real estate market. Due to the current real estate market, the Debtor's inability to convince all of his secured creditors to agree to loan modifications without the assistance of a bankruptcy proceeding,

and the potential tax ramifications if the Debtor did not file for bankruptcy protection, the Debtor had no choice but to file a Chapter 11 Bankruptcy.

## IV.   SIGNIFICANT EVENTS DURING THE CHAPTER 11

### A.   Administrative Proceedings

The Debtor filed his Petition for Relief under Chapter 11 on May 14, 2009. A first meeting of creditors was held on June 16, 2009 at 11:00 a.m.

### B.   Retention of Professionals

The Debtor retained Aiken Schenk Hawkins & Ricciardi P.C. ("ASHR") to act as his bankruptcy counsel. An Order approving ASHR was signed by the Court on May 19, 2009. The Debtor retained Chester E. May and the firm of May Tax Corporation as his accountant. An Order approving the accountant was signed on August 27, 2009.

### C.   Appointment of Unsecured Creditors Committee

On June 12, 2009, the United States Trustee's Office filed a statement concerning its inability to appoint a committee of unsecured creditors.

### D.   Motion to Use Cash Collateral

On May 29, 2009, the Debtor filed Motion for Authorization to Use Cash Collateral. The hearing was held on June 15, 2009. The Order Approving the Motion for Authorization to Use Cash Collateral was signed on June 17, 2009.

### E.   Claims Bar Date

On June 22, 2009, the Debtor filed a Motion to Set Bar Date to File Claims. On July 13, 2009, the Court signed an Amended Order setting August 20, 2009 as the bar date for claims.

### F.   GMAC Mortgage, LLC's Motion for Relief from Stay

On August 5, 2009, GMAC Mortgage, LLC ("GMAC") filed a Motion for Relief from Stay regarding the Debtor's residence located at 1141 E. Tuckey Lane, Phoenix, Maricopa County, Arizona (the "Tuckey Lane Property"). Pursuant to its Motion, GMAC seeks an Order vacating the stay imposed by 11 U.S.C. § 362 so that GMAC will be free to enforce its claims and assert its rights to the property under its Deed of Trust secured by the Tuckey Lane Property. GMAC alleges that it is not adequately protected and there is no equity in the Tuckey Lane Property. The Debtor has filed an Objection to GMAC's Motion stating that the Debtor wishes to keep his residence and alleging that

GMAC did not provide any evidence of value. The Debtor also alleges that despite the fact that GMAC and/or its parent company received billions of dollars in TARP funds, monies paid for by taxpayers such as the Debtor, GMAC refused the Debtor's request for a loan modification to make his home more affordable. This Debtor's Plan provides an option that will essentially allow GMAC to "sell" the property at the highest possible value it could obtain from a third-party trustee sale purchaser while avoiding the costs of foreclosure, lift stay litigation and real estate commissions at 6% of the value of the collateral. Because this matter is ongoing, interested parties should review the Court's docket for the current status of this matter.

G.    <u>Wells Fargo Bank, N.A.'s Motion for Relief from Stay</u>

On August 6, 2009, Wells Fargo Bank, N.A. ("Wells Fargo") filed a Motion for Relief from Stay regarding the Debtor's investment property located at 30902 Clubhouse Drive, Laguna Niguel, Orange County, California (the "Clubhouse Property"). Pursuant to its Motion, Wells Fargo seeks an Order vacating the stay imposed by 11 U.S.C. § 362 so that Wells Fargo will be free to enforce its claims and assert its rights to the property under its Deed of Trust secured by the Clubhouse Property. Wells Fargo alleges that it is not adequately protected, there is no equity in the Clubhouse Property and that the property is not necessary for an effective reorganization. The Debtor has filed an Objection to Wells Fargo's Motion stating that the Debtor wishes to keep the Clubhouse Property and alleging that Wells Fargo did not provide any evidence of value. Because this matter is ongoing, interested parties should review the Court's docket for the current status of this matter.

H.    <u>American Brokers Conduit's Motion for Relief from Stay</u>

On August 6, 2009, American Brokers Conduit ("ABC") filed a Motion for Relief from Stay regarding the Debtor's investment property located at 4014 North 88th Drive, Phoenix, Maricopa County, Arizona (the "88th Drive Property"). Pursuant to its Motion, ABC seeks an Order vacating the stay imposed by 11 U.S.C. § 362 so that ABC will be free to enforce its claims and assert its rights to the property under its Deed of Trust secured by the 88th Drive Property. ABC alleges that it is not adequately protected, there is no equity in the 88th Drive Property and that the property is not necessary for an effective reorganization. The Debtor has filed an Objection to ABC's Motion stating that the Debtor wishes to keep the 88th Drive Property and alleging that ABC did not provide any evidence of value. A preliminary hearing is currently scheduled for October 7, 2009 at 11:00 a.m.

Because this matter is ongoing, interested parties should review the Court's docket for the current status of this matter.

## V.    DESCRIPTION OF ASSETS AND LIABILITIES OF THE DEBTOR

The Debtor has not obtained recent appraisals of any of his assets. The values ascribed to the assets below are based on the Debtor's best estimate and other factors such as the purchase price, comparable sales and tax assessments.

### A.    Real Property

#### 1.    Tuckey Lane Property

The Debtor owns a single family residence located at 1141 East Tuckey Lane, Phoenix, Arizona 85014 (the "Tuckey Lane Property"). The Debtor believes the current value of the Tuckey Lane Property is $300,000.00 based upon the current market and comparative sales. GMAC Mortgage LLC ("GMAC") filed a secured proof of claim in the amount of $484,121.39 pursuant to its first position deed of trust. When possible costs of sale are factored in, the Debtor does not believe that any equity exists in the Tuckey Lane Property for the bankruptcy estate.

#### 2.    Clubhouse Drive Property

The Debtor owns a condominium located at 30902 Clubhouse Drive #28F, Laguna Niguel, California 92677 (the "Clubhouse Property"). The Debtor believes the current value of the Clubhouse Property is $190,000.00 based upon the current market and comparative sales. Wells Fargo filed a first position secured proof of claim in the amount of $370,967.65. Chase filed a second position secured proof of claim in the amount of $104,284.49. When possible costs of sale are factored in, the Debtor does not believe that any equity exists in the Clubhouse Property for Chase or the bankruptcy estate.

#### 3.    Montecito Avenue Property

The Debtor owns a single family residence located at 10407 West Montecito Avenue, Phoenix, Arizona 85037 (the "Montecito Property"). The Debtor believes the current value of the Montecito Property is $70,000.00 based upon the current market and comparative sales. One West Bank FSB fka Indymac Federal Bank FSB ("Indy Mac") filed a secured proof of claim in the amount of $130,688.01 pursuant to its first position deed of trust. BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P. ("BAC") filed a secured proof of claim in the amount of

$16,200.00 pursuant to its second position deed of trust. On September 24, 2009, BAC filed a Notice of Transfer of Claim Other Than for Security transferring its claim to Green Tree Servicing, LLC. When possible costs of sale are factored in, the Debtor does not believe that any equity exists in the Montecito Property for BAC or the bankruptcy estate.

4.    78th Drive Property

The Debtor owns a condominium located at 20100 North 78th Drive #2033, Scottsdale, Arizona 85255 (the "78th Drive Property"). The Debtor believes the current value of the 78th Drive Property is $50,000.00 based upon the current market and comparative sales. Wells Fargo filed a secured proof of claim in the amount of $251,576.14 pursuant to its first position deed of trust. When possible costs of sale are factored in, the Debtor does not believe that any equity exists in the 78th Drive Property for the bankruptcy estate.

5.    11th Place Property

The Debtor owns a single family residence located at 7038 North 11th Place, Phoenix, Arizona 85020 (the "11th Place Property"). The Debtor believes the current value of the 11th Place Property is $95,000.00 based upon the current market and comparative sales. National City Mortgage filed a first position secured proof of claim in the amount of $147,735.69. Bank of America filed a second position secured proof of claim in the amount of $49,873.25. When possible costs of sale are factored in, the Debtor does not believe that any equity exists in the 11th Place Property for Bank of America or the bankruptcy estate.

6.    88th Drive Property

The Debtor owns a single family residence located at 4014 North 88th Drive, Phoenix, Arizona 85037 (the "88th Drive Property"). The Debtor believes the current value of the 88th Drive Property is $40,000.00 based upon the current market and comparative sales. American Brokers Conduit/BAC Home Loans Servicing ("ABC")[1] filed a secured proof of claim in the amount of $139,458.52 pursuant to its first position deed of trust. When possible costs of sale are factored in, the Debtor does not believe that any equity exists in the 88th Drive Property for the bankruptcy estate.

7.    Maxwell Lane Property

---

[1] Debtor listed this creditor as Countrywide Home Loans in his Schedule D.

The Debtor owns approximately .2 acres of vacant land located at 2465 Maxwell Lane, Sedona, Arizona 86336 (the "Maxwell Property"). The Debtor believes the current value of the Maxwell Property is $75,000.00 based upon the current market and comparative sales. M&I Marshall & Ilsley Bank ("M&I") filed a secured proof of claim in the amount of $120,426.00 pursuant to its first position deed of trust. When possible costs of sale are factored in, the Debtor does not believe that any equity exists in the Maxwell Property for the bankruptcy estate.

 B. Personal Property

  1. Bank Accounts

The Debtor held approximately $150.00 in bank accounts at the time of the filing of the petition for relief herein. The Debtor claims $150.00 exemption personal bank accounts.

  2. Miscellaneous Household Goods and Furnishings

The Debtor listed approximately $3,935.00 in miscellaneous household goods, furnishings and books in his Schedule B. All of these assets are exempt.

  3. Books and Pictures

The Debtor listed approximately $50.00 in books. These assets are exempt.

  4. Miscellaneous Men's Wearing Apparel

The Debtor listed approximately $500.00 in miscellaneous wearing apparel in his Schedule B. These assets are exempt.

  5. Watches and Diamond Ring

The Debtor listed approximately $50.00 for watches in his Schedule B. These assets are exempt.

  6. Hobby Equipment

The Debtor listed (3) bicycles and (3) bibles valued at approximately $470.00 in his Schedule B. These assets are exempt. The Debtor also listed skateboards, surfboards and a snowboard valued at approximately $540.00.

  7. Interest in IRA

The Debtor listed a 401(k) with ING valued at $1,298.00 in his Schedule B. This asset is exempt.

  8. Stock and Interests in Incorporated and Unincorporated Businesses

The Debtor listed 100% ownership interests in Sburgueno Holdings, LLC, SB Holdings 1, LLC, SB Holdings 2, LLC and SB Holdings 3, LLC. The Debtor listed the values as "Unknown" because these interests are unmarketable; it is difficult to value these assets. The Debtor does not believe that these LLCs hold any value for the benefit of the bankruptcy estate and their sole value is as a means for the Debtor to generate an income. Thus for purposes of the liquidation analysis herein, the Debtor values these assets at $0.00.

9.     Accounts Receivable

The Debtor listed two judgments against Dona K. Noe and Gustavo Deleon valued at $84,869.00 in his Schedule B. These assets are not exempt; however, these judgments are uncollectible. The Debtor also listed a judgment against Tim Gibson valued at $1,411.00 in his Schedule B. The Debtor is attempting to collect payment on this judgment through a garnishment proceeding. Nonetheless, for the liquidation analysis provided herein, the Debtor values these assets at $0.00 because the likelihood of collection is nominal.

10.     Vehicles

The Debtor listed a 2000 Toyota Tundra valued at $5,405.00, a 2005 Honda CRF450X dirt bike valued at $1,900.00 and a 2008 Kawasaki CRF450R dirt bike valued at $2,500.00 in his Schedule B. The Debtor claims a $5,000 exemption on the Toyota Tundra.

C.     Exemptions

The Debtor has listed various exemptions for personal property in Schedule C. At this time no objections to exemptions have been filed and the time for filing objections has passed.

D.     Financial Reports

The Debtor's monthly operating reports are current and copies can be obtained from the Court's electronic docket.

E.     Administrative Expenses

The Debtor anticipates his administrative expenses will consist primarily of attorneys' fees for ASHR. ASHR received a cashier's check in the amount of $25,000.00 from the Debtor. ASHR applied $1,039.00 for the filing fee for the Chapter 11 bankruptcy proceeding of the Debtor. ASHR offset $1,852.00 for pre-petition services performed. ASHR estimates its remaining fees will be in the range of $25,000.00 depending on creditor activity in this case. Whether ASHR preserves its interest

in these assets or is simply paid through a sale of these assets, these assets should be sufficient to pay ASHR's Administrative Claim. There may be additional administrative expenses for related costs such as experts and appraisal fees.

F.    Priority Claims

The Debtor believes that he is current on his tax liability and that there will not be any priority taxes owing. The Internal Revenue Service filed a priority Proof of Claim in the amount of $328.64 for estimated 2008 individual taxes. A Proof of claim has not yet been filed by the Arizona Department of Revenue.

G.    Secured Claims

Yavapai County, Arizona, filed a secured Proof of Claim in the amount of $746.11 related to the Debtor's Maxwell Lane Property.

National City filed a secured proof of claim in the amount of $147,735.69 for its first position lien on the 11th Place Property. Bank of America filed a secured proof of claim in the amount of $49,873.25 for its second position lien on the 11th Place Property.

Wells Fargo filed a secured proof of claim in the amount of $370,967.65 for its first position lien on the Clubhouse Property. Chase filed a secured proof of claim in the amount of $104,284.49 for its second position lien on the Clubhouse Property.

Indy Mac filed a secured proof of claim in the amount of $130,388.01 for its first position lien on the Montecito Property. BAC filed a secured proof of claim in the amount of $16,200.00 for its second position lien on the Montecito Property. On September 24, 2009, BAC filed a Notice of Transfer of Claim Other Than for Security transferring its claim on the Montecito Property to Green Tree Servicing, LLC.

Wells Fargo filed a secured proof of claim in the amount of $251,576.14 for its first position lien on the 78th Drive Property.

GMAC filed a secured proof of claim in the amount of $484,121.39 for its first position lien on the Tuckey Lane Property.

ABC filed a secured proof of claim in amount of $139,458.52 for its secured position on the 88th Drive Property. Ryan's Ridge filed a secured proof of claim in the amount of $154.00 for homeowner's assessment fees.

M&I filed a secured proof of claim in the amount of $120,426.00 for its secured position on the Maxwell Property.

H.    Domestic Support Obligations

The Debtor is not required by a judicial or administrative order, or by statute, to pay any domestic support obligation.

I.    Unsecured Claims

The Debtor anticipates the total amount of Allowed Unsecured Claims in this Class will be approximately $39,910.00 owed for business-related debt, lines of credit, personal guarantees, and credit card purchases. These claims will be paid a pro-rata distribution of the Debtor's Excess Cash Flow up to the value of the Debtor's Liquidation Equity after all senior Allowed Claims have been paid.

J.    Claims Register

Attached hereto as Exhibit "B" is a chart reflecting the status of claims as the Debtor is presently aware.

**VI.    CLASSIFICATION**

THE FOLLOWING STATEMENTS CONCERNING THE PLAN ARE MERELY A SUMMARY OF THE PLAN AND ARE NOT COMPLETE. THE STATEMENTS ARE QUALIFIED ENTIRELY BY EXPRESS REFERENCE TO THE PLAN. CREDITORS ARE URGED TO CONSULT WITH COUNSEL OR EACH OTHER IN ORDER TO UNDERSTAND THE PLAN FULLY. THE PLAN IS COMPLETE, INASMUCH AS IT PROPOSES A LEGALLY BINDING AGREEMENT BY THE DEBTOR. AN INTELLIGENT JUDGMENT CANNOT BE MADE WITHOUT READING IT IN FULL.

**I.    CLASSIFICATION OF CLAIMS AND INTERESTS.**

**A.    Priority Claims: Class 1**

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims).

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(7) (Tenant Claims).

Class 1-C consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8) (Tax Claims).

**B.**    <u>Secured Claims: Class 2</u>

Class 2-A consists of the Allowed Secured Claim of Maricopa County.

Class 2-B consists of the Allowed Secured Claim of Orange County.

Class 2-C consists of the Allowed Secured Claim of Yavapai County.

Class 2-D consists of the Allowed Secured Claim of GMAC Mortgage LLC ("GMAC") related to its lien on the Tuckey Lane Property.

Class 2-E consists of the Allowed Secured Claim of Wells Fargo related to its first position lien on the Clubhouse Property.

Class 2-F consists of the Allowed Secured Claim of Chase related to its second position lien on the Clubhouse Property.

Class 2-G consists of the Allowed Secured Claim of La Vista at Laguna Niguel Community Association ("La Vista") related to the Clubhouse Property.

Class 2-H consists of the Allowed Secured Claim of One West Bank FSB fka Indymac Federal Bank FSB ("Indy Mac") related to its first position lien on the Montecito Property.

Class 2-I consists of the Allowed Secured Claim of Green Tree Servicing LLC ("Green Tree") related to its second position lien on the Montecito Property.

Class 2-J consists of the Allowed Secured Claim of Wells Fargo related to its lien on the 78th Drive Property.

Class 2-K consists of the Allowed Secured Claim of Edge at Grayhawk Condominium Association ("Edge") related to the 78th Drive Property.

Class 2-L consists of the Allowed Secured Claim of Grayhawk Community Association related to the 78th Drive Property.

Class 2-M consists of the Allowed Secured Claim of National City Mortgage ("National City") related to its first position lien on the 11th Place Property.

Class 2-N consists of the Allowed Secured Claim of Bank of America related to its second position lien on the 11th Place Property.

Class 2-O consists of the Allowed Secured Claim of American Brokers Conduit/BAC Home Loans Servicing ("ABC")[2] related to its lien on the 88th Drive Property.

Class 2-P consists of the Allowed Secured Claim of Ryan's Ridge Homeowners Association/Amcor Property Professionals ("Ryan's Ridge") related to the 88th Drive Property.

Class 2-Q consists of the Allowed Secured Claim of M&I Marshall & Ilsley Bank ("M&I") related to its lien on the Maxwell Property.

**C.**    **General Unsecured Claims: Class 3**

Class 3-A consists of the Allowed Unsecured Claims of Creditors of the Debtor.

**D.**    **Debtors' Interest: Class 4**

Class 4-A consists of the Allowed Interest of the Debtor.

## VII.    IMPAIRMENT OF CLASSES

Class 1-A and 1-B are unimpaired under the Plan. All other classes are impaired, as that term is defined in 11 U.S.C. §1124.

## VIII.    TREATMENT OF CLASSES

**A.**    **Priority Claims: Class 1**

    **1.**    **Administrative Claims: 1-A**

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims) related to the Debtor. Unless they agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court. Any Class 1-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. The Allowed Administrative Claim of counsel for the Debtor that has not been paid as of the Effective Date, shall be paid in monthly payments of principal and interest, with interest at 8%, until paid in full.

    **1.**    **Tenant Claims: 1-B**

---

[2] Debtor listed this creditor as Countrywide Home Loans in his Schedule D.

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(7) relating to tenant security deposits, which includes: unsecured claims of individuals, to the extent of $2,425.00 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property…for the personal, family, or household use of such individuals, that were not delivered or provided. The Clubhouse Property is leased to David Brooks; the Montecito Property is leased to Darlene Montes; the 78th Drive Property is leased to Gregory Silva. To the extent that the Debtor retains a property and any tenant has provided the Debtor a deposit relating to the lease of any real property that falls within the $2,425.00 debt limitations, the tenant's deposit rights shall be preserved and the Debtor shall perform and act with the deposit in accordance with the terms of the pre-petition lease. Any deposit that exceeds the $2,425.00 dollar limitation or definitional limitations set forth in 11 U.S.C. §507(a)(7) shall be treated as a general unsecured claim under Class 3-A.

**2.** **Tax Claims: 1-C**

Class 1-C consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8)-tax claims. The Debtor does not anticipate that any Claims will exist in this Class. As provided in 11 U.S.C. §1129(a)(9)(C), unless they agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-C shall be paid in full, in cash, in regular installment payments of a total value, as of the Effective Date of the Plan, equal to the Allowed Priority Claim, over a period ending five (5) years after the Petition Date, and in a manner that is not less favorable than the most favored non-priority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under §1122(b)). Any Allowed Priority Claims will receive interest at the Tax Claim Rate. Any Class 1-C Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.

**B.** **Secured Claims: Class 2**

**2.** **Maricopa County: Class 2-A**

This Class consists of the Allowed Secured Claim held by Maricopa County for real property taxes owing on the Debtor's 78th Drive Property as of the Effective Date. Maricopa County filed a Proof of Claim in the amount of $2,142.06 representing 2008 real property taxes owing for the 78th Drive Property. Maricopa County will retain its lien on the 78th Drive Property, and any of the Debtor's other real properties located in Maricopa County, if applicable, and will be paid its Allowed Secured Claim as follows:

The Debtor's Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtor will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtor will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtor retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtor shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtor may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtor will have no further liability for these taxes upon the foreclosure by the secured creditor.

3. **Orange County: Class 2-B**

This Class consists of the Allowed Secured Claim held by Orange County for real property taxes owing on the Debtor's Clubhouse Property as of the Effective Date. Orange County filed a Proof of Claim in the amount of $4,590.00 representing 2009 estimated real property taxes for the Clubhouse Property. Orange County will retain its liens on Clubhouse Property and will be paid its Allowed Secured Claim as follows:

The Debtor's Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtor will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtor will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtor retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtor shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtor may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtor will have no further liability for these taxes upon the foreclosure by the secured creditor.

**4.    Yavapai County:  Class 2-C**

This Class consists of the Allowed Secured Claim held by Yavapai County for real property taxes owing on the Debtor's Maxwell Property as of the Effective Date. Yavapai County filed a Proof of Claim in the amount of $746.11 representing 2008 real property taxes for the Maxwell Property. Yavapai County will retain its liens on Maxwell Property and will be paid its Allowed Secured Claim as follows:

The Debtor's Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtor will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtor will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtor retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date,

(b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtor shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtor may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtor will have no further liability for these taxes upon the foreclosure by the secured creditor.

## 5. **GMAC:  Class 2-D**

This Class consists of the Allowed Secured Claim held by GMAC, as to its first position secured interest in the Tuckey Lane Property. The Debtor anticipates that he will reach a stipulation with GMAC as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. GMAC filed a secured proof of claim in the amount of $484,121.39. The Debtor asserts that GMAC's Claim is in first position on the Tuckey Lane Property junior only to real property taxes. The Debtor believes the current value of the Tuckey Lane Property is $300,000.00 based upon the current market and comparative sales. GMAC's Allowed Secured Claim shall be allowed at the value of the Tuckey Lane Property minus all secured debt that is senior to GMAC's lien position. As a result, GMAC's Allowed Secured Claim is $300,000.00 ($300,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. GMAC shall release its lien in the Tuckey Lane

Property once its Allowed Secured Claim has been paid. The Debtor may sell the Tuckey Lane Property at any time without penalty so long as the balance owing on GMAC's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of GMAC's Allowed Claim shall be treated in accordance with Class 3-A.

### 6. Wells Fargo: Class 2-E

This Class consists of the Allowed Secured Claim held by Wells Fargo, as to its first position secured interest in the Clubhouse Property. The Debtor anticipates that he will reach a stipulation with Wells Fargo concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Wells Fargo filed a secured proof of claim in the amount of $370,967.65. The Debtor asserts that Wells Fargo's Claim is in first position on the Clubhouse Property junior only to real property taxes. Wells Fargo shall retain its lien on the Clubhouse Property. Wells Fargo's Allowed Secured Claim shall be allowed at the value of the Clubhouse Property minus all secured debt that is senior to Wells Fargo's lien position. The Debtor believes the current value of the Clubhouse Property is $190,000.00 based upon the current market and comparative sales. As a result, Wells Fargo's Allowed Secured Claim is $185,410.00 ($190,000.00 value minus $4,590.00 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. EMC shall release its lien in the Coral Reef Property once its Allowed Secured Claim has been paid. The Debtor may sell the Coral Reef Property at any time without penalty so long as the balance owing on EMC's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of EMC's Allowed Claim shall be treated in accordance with Class 3-A.

### 7.  Chase: Class 2-F

This Class consists of the Allowed Secured Claim held by Chase as to its second position secured interest in the Clubhouse Property. The Debtor anticipates that he will reach a stipulation with Chase concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Chase filed a secured proof of claim in the amount of $104,284.49. The Debtor asserts that Chase's Claim is in second position on the Clubhouse Property junior to real property taxes and Wells Fargo. The Debtor believes the current value of the Clubhouse Property is $190,000.00 based upon the current market and comparative sales. Chase's Allowed Secured Claim shall be allowed at the value of the Clubhouse Property minus all senior secured claims. As a result, Chase's Allowed Secured Claim is $0.00 ($190,000.00 value minus $4,590.00 owing in real property taxes minus Wells Fargo's Allowed Secured Claim of $185,410.00). Chase shall immediately release its lien on the Clubhouse Property on the Effective Date. The balance of Chase's Allowed Claim shall be treated in accordance with Class 3-A.

### 8.  La Vista at Laguna Niguel Community Association: Class 2-G

This Class consists of the Allowed Claim held by Laguna Niguel Community Association ("La Vista") as to its secured interest in the Clubhouse Property for HOA fees. The Debtor anticipates that he will reach a stipulation with La Vista concerning the treatment of its Allowed Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. La Vista has not filed a proof of claim. La Vista's Allowed Claim shall only consist of HOA dues and assessments and shall not contain any penalties, fees, or attorneys fees. In the event of any dispute as to the amount of La Vista's Allowed Claim, the Debtor will file an objection to the proof of claim. Assuming the Debtor retains ownership of the Clubhouse Property, La Vista's Allowed Claim shall be paid in equal monthly payments, without interest, paid over 6 months. The balance of La Vista's Allowed Claim, if any, shall be treated in accordance with Class 3-A.

1

2

### 9. **Indy Mac: Class 2-H**

This Class consists of the Allowed Secured Claim held by One West Bank FSB fka Indymac Federal Bank FSB ("Indy Mac"), as to its first position secured interest in the Montecito Property. The Debtor anticipates that he will reach a stipulation with Indy Mac concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Indy Mac filed a secured proof of claim in the amount of $130,688.01. The Debtor asserts that Indy Mac's Claim is in first position on the Montecito Property junior only to real property taxes. Indy Mac shall retain its lien on the Montecito Property. Indy Mac's Allowed Secured Claim shall be allowed at the value of the Montecito Property minus all secured debt that is senior to Indy Mac's lien position. The Debtor believes the current value of the Montecito Property is $70,000.00 based upon the current market and comparative sales. As a result, Indy Mac's Allowed Secured Claim is $70,000.00 ($70,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Indy Mac shall release its lien in the Montecito Property once its Allowed Secured Claim has been paid. The Debtor may sell the Montecito Property at any time without penalty so long as the balance owing on Indy Mac's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Indy Mac's Allowed Claim shall be treated in accordance with Class 3-A.

### 10. **Green Tree: Class 2-I**

This Class consists of the Allowed Secured Claim held by Green Tree Servicing LLC ("Green Tree") as to its second position secured interest in the Montecito Property. The Debtor anticipates that he will reach a stipulation with Green Tree concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to

the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P. ("BAC") filed a secured proof of claim in the amount of $16,200.00. On September 24, 2009, BAC filed a Notice of Transfer of Claim Other Than for Security transferring its claim to Green Tree Servicing, LLC. The Debtor asserts that Green Tree's Claim is in second position on the Montecito Property junior to real property taxes and Indy Mac. The Debtor believes the current value of the Montecito Property is $70,000.00 based upon the current market and comparative sales. Green Tree's Allowed Secured Claim shall be allowed at the value of the Montecito Property minus all secured debt that is senior to Green Tree's lien position. As a result, Green Tree's Allowed Secured Claim is $0.00 ($70,000.00 value minus $0 owing in real property taxes minus Indy Mac's Allowed Secured Claim of $70,000.00). Green Tree shall immediately release its lien on the Montecito Property on the Effective Date. The balance of Green Tree's Allowed Claim shall be treated in accordance with Class 3-A.

**11. Wells Fargo: Class 2-J**

This Class consists of the Allowed Secured Claim held by Wells Fargo, as to its first position secured interest in the 78th Drive Property. The Debtor anticipates that he will reach a stipulation with Wells Fargo's concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Wells Fargo filed a secured proof of claim in the amount of $251,576.14. The Debtor asserts that Wells Fargo's Claim is in first position on the 78th Drive Property junior only to real property taxes. Wells Fargo shall retain its lien on the 78th Drive Property. Wells Fargo's Allowed Secured Claim shall be allowed at the value of the 78th Drive Property minus all secured debt that is senior to Wells Fargo's lien position. The Debtor believes the current value of the 78th Drive Property is $50,000.00 based upon the current market and comparative sales. As a result, Wells Fargo's Allowed Secured Claim is $47,857.94 ($50,000.00 value minus $2,142.06 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20

years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Wells Fargo shall release its lien in the 78th Drive Property once its Allowed Secured Claim has been paid. The Debtor may sell the 78th Drive Property at any time without penalty so long as the balance owing on Wells Fargo's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Wells Fargo's Allowed Claim shall be treated in accordance with Class 3-A.

### 12. Edge at Grayhawk Condominium Association: Class 2-K

This Class consists of the Allowed Claim held by Edge at Grayhawk Condominium Association ("Edge") as to its secured interest in the 78th Drive Property for HOA fees. The Debtor anticipates that he will reach a stipulation with Edge concerning the treatment of its Allowed Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Edge has not filed a proof of claim. Edge's Allowed Claim shall only consist of HOA dues and assessments and shall not contain any penalties, fees, or attorneys fees. In the event of any dispute as to the amount of Edge's Allowed Claim, the Debtor will file an objection to the proof of claim. Assuming the Debtor retains ownership of the 78th Drive Property, Edge's Allowed Claim shall be paid in equal monthly payments, without interest, paid over 6 months. The balance of Edge's Allowed Claim, if any, shall be treated in accordance with Class 3-A.

### 13. Grayhawk Community Association: Class 2-L

This Class consists of the Allowed Claim held by Grayhawk Community Association ("Grayhawk") as to its secured interest in the 78th Drive Property for HOA fees. The Debtor anticipates that he will reach a stipulation with Grayhawk concerning the treatment of its Allowed Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Grayhawk has not filed a proof of claim. Grayhawk's Allowed Claim shall only consist of HOA dues and assessments and shall not contain any penalties, fees, or attorneys fees. In the event of any dispute as to the amount of Grayhawk's Allowed Claim, the Debtor will file an

objection to the proof of claim.  Assuming the Debtor retains ownership of the 78th Drive Property, Grayhawk's Allowed Claim shall be paid in equal monthly payments, without interest, paid over 6 months. The balance of Grayhawk's Allowed Claim, if any, shall be treated in accordance with Class 3-A.

### 14.   **National City:  Class 2-M**

This Class consists of the Allowed Secured Claim held by National City, as to its first position secured interest in the 11th Place Property.  The Debtor anticipates that he will reach a stipulation with National City concerning the treatment of its Allowed Secured Claim.  In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control.  National City filed a secured proof of claim in the amount of $147,735.69.  The Debtor asserts that National City's Claim is in first position on the 11th Place Property junior only to real property taxes.  National City shall retain its lien on the 11th Place Property.  National City's Allowed Secured Claim shall be allowed at the value of the 11th Place Property minus all secured debt that is senior to National City's lien position.  The Debtor believes the current value of the 11th Place Property is $95,000.00 based upon the current market and comparative sales.  As a result, National City's Allowed Secured Claim is $95,000.00 ($95,000.00 value minus $0 owing in real property taxes).  This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose.  The Debtor may prepay this obligation without penalty at any time.  National City shall release its lien in the 11th Place Property once its Allowed Secured Claim has been paid.  The Debtor may sell the 11th Place Property at any time without penalty so long as the balance owing on National City's Allowed Secured Claim is satisfied out of the sale proceeds.  The balance of National City's Allowed Claim shall be treated in accordance with Class 3-A.

### 15.   **Bank of America:  Class 2-N**

This Class consists of the Allowed Secured Claim held by Bank of America as to its second position secured interest in the 11th Place Property. The Debtor anticipates that he will reach a stipulation with Bank of America concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Bank of America filed a secured proof of claim in the amount of $49,873.25. The Debtor asserts that Bank of America's Claim is in second position on the 11th Place Property junior to real property taxes and National City. The Debtor believes the current value of the 11th Place Property is $95,000.00 based upon the current market and comparative sales. Bank of America's Allowed Secured Claim shall be allowed at the value of the 11th Place Property minus all secured debt that is senior to Bank of America's lien position. As a result, Bank of America's Allowed Secured Claim is $0.00 ($95,000.00 value minus $0 owing in real property taxes minus National City's Allowed Secured Claim of $95,000.00). Bank of America shall immediately release its lien on the 11th Place Property on the Effective Date. The balance of Bank of America's Allowed Claim shall be treated in accordance with Class 3-A.

**16.  ABC: Class 2-O**

This Class consists of the Allowed Secured Claim held by American Brokers Conduit/BAC Home Loans Servicing ("ABC")[3], as to its first position secured interest in the 88th Drive Property. The Debtor anticipates that he will reach a stipulation with ABC concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. ABC filed a secured proof of claim in the amount of $139,458.52. The Debtor asserts that ABC's Claim is in first position on the 88th Drive Property junior only to real property taxes. ABC shall retain its lien on the 88th Drive Property. ABC's Allowed Secured Claim shall be allowed at the value of the 88th Drive Property minus all secured debt that is senior to ABC's lien position. The Debtor believes the current value of the 88th Drive Property is $40,000.00 based upon the current market and comparative sales. As a result,

---

[3] Debtor listed this creditor as Countrywide Home Loans in his Schedule D.

ABC's Allowed Secured Claim is $40,000.00 ($40,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. ABC shall release its lien in the 88th Drive Property once its Allowed Secured Claim has been paid. The Debtor may sell the 88th Drive Property at any time without penalty so long as the balance owing on ABC's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of ABC's Allowed Claim shall be treated in accordance with Class 3-A.

### 17.   Ryan's Ridge:  Class 2-P

This Class consists of the Allowed Claim held by Ryan's Ridge Homeowners Association/Amcor Property Professionals ("Ryan's Ridge) as to its secured interest in the 88th Drive Property for HOA fees. The Debtor anticipates that he will reach a stipulation with Ryan's Ridge concerning the treatment of its Allowed Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Ryan's Ridge filed a secured proof of claim in the amount of $154.00. Ryan's Ridge's Allowed Claim shall only consist of HOA dues and assessments and shall not contain any penalties, fees, or attorneys fees. In the event of any dispute as to the amount of Ryan's Ridge's Allowed Claim, the Debtor will file an objection to the proof of claim. Assuming the Debtor retains ownership of the 88th Drive Property, Ryan's Ridge's Allowed Claim shall be paid in equal monthly payments, without interest, paid over 6 months. The balance of Ryan's Ridge's Allowed Claim, if any, shall be treated in accordance with Class 3-A.

### 18.   M&I:  Class 2-Q

This Class consists of the Allowed Secured Claim held by M&I, as to its first position secured interest in the Maxwell Property. The Debtor anticipates that he will reach a stipulation with M&I concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is

reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. M&I filed a secured proof of claim in the amount of $120,426.00. The Debtor asserts that M&I's Claim is in first position on the Maxwell Property junior only to real property taxes. M&I shall retain its lien on the Maxwell Property. M&I's Allowed Secured Claim shall be allowed at the value of the Maxwell Property minus all secured debt that is senior to M&I's lien position. The Debtor believes the current value of the Maxwell Property is $75,000.00 based upon the current market and comparative sales. As a result, M&I's Allowed Secured Claim is $74,253.89 ($75,000.00 value minus $746.11 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. M&I shall release its lien in the Maxwell Property once its Allowed Secured Claim has been paid. The Debtor may sell the Maxwell Property at any time without penalty so long as the balance owing on M&I's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of M&I's Allowed Claim shall be treated in accordance with Class 3-A.

C.     **Unsecured Claims: Class 3**

1.     **General Unsecured Claims:  Class 3-A**

Class 3-A consists of the Allowed Unsecured Claims of Creditors. Class 3-A Creditors shall be paid a pro-rata share from the Debtor's Excess Cash Flow, on a quarterly basis, in an amount sufficient to fund the value of the Debtor's Liquidation Equity (as calculated in the Debtor's Disclosure Statement). Any Allowed Unsecured Claims that are determined to be non-dischargeable will continue to receive a pro-rata distribution of the Excess Cash Flow after all senior Allowed Claims have been paid, until satisfied in full.

**D.** **Debtors' Interest: Class 4**

**1.** **Debtors Interest: Class 4-A**

Pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, the Debtor shall retain his interest in all estate property in consideration of his funding of Allowed Claims and shall receive all exempt property.

## IX. LIQUIDATION ANALYSIS

The following is a Liquidation Analysis indicating what the Debtor believes Creditors would receive in the event of a liquidation. The figures for "market value" and "liquidation value" are the Debtor's best estimate on what these assets are worth on a market or liquidation basis.

| Asset | Market Value | Liquidation Value | Exemption | Secured Claim | Equity |
|---|---|---|---|---|---|
| Tuckey Lane Property | 300,000 | 270,000[4] | 150,000 | 484,121 | 0 |
| Clubhouse Property | 190,000 | 171,000[2] | 0 | 464,526 | 0 |
| Montecito Property | 70,000 | 63,000[2] | 0 | 146,588 | 0 |
| 78th Drive Property | 50,000 | 45,000[2] | 0 | 251,576 | 0 |
| 11th Place Property | 95,000 | 85,500[2] | 0 | 197,609 | 0 |
| 88th Drive Property | 40,000 | 36,000[2] | 0 | 139,459 | 0 |
| Maxwell Property | 75,000 | 67,500[2] | 0 | 119,549 | 0 |
| Bank Deposits | 150 | 150 | 150 | 0 | 0 |
| Misc. Household Goods | 3,935 | 3,541.50[5] | 4,000 | 0 | 0 |
| Misc. Books and Pictures | 50 | 45[3] | 250 | 0 | 0 |
| Misc. Wearing Apparel | 500 | 450[3] | 500 | 0 | 0 |
| (2) Men's Watches | 50 | 45[3] | 100 | 0 | 0 |
| (3) Bicycles, (3) Bibles | 470 | 423[3] | 500 | 0 | 0 |
| Skateboards, Surfboards, Snowboard | 540 | 486[3] | 0 | 0 | 486 |
| 401(k) | 1,298 | 1,298 | 1,298 | 0 | 0 |
| Interests in (4) LLCs | Unknown | 0 | 0 | 0 | 0 |
| Judgment against Dona K. Noe | 82,783 | 0 | 0 | 0 | 0 |
| Judgment against Tim Gibson | 1,411 | 0 | 0 | 0 | 0 |
| Judgment against Gustavo Deleon | 2,086 | 0 | 0 | 0 | 0 |
| 2002 Toyota Tundra | 5,405 | 4,864.50[3] | 5,000 | 0 | 0 |
| 2005 Honda CRF450X dirt bike | 1,900 | 1,710[3] | 0 | 0 | 1,710 |
| 2008 Kawasaki CRF450R dirt bike | 2,500 | 2,250[3] | 0 | 0 | 2,250 |
| Food, Fuel and Supplies | 100 | 90[3] | 100 | 0 | 0 |
| Wages/Salary | Unknown | Unknown | 0 | 0 | 0 |
| | | | | | |
| Equity | | | | | 4,446 |

---

[4] The Debtor assumes approximately 10% of value for sales costs and commissions to sell the real property.
[5] The Debtor assumes 10% cost of sale on liquidation.

The Debtor anticipates that his attorneys fees will be $25,000 for processing this bankruptcy proceeding and that he does not owe any priority claim for taxes. Thus, after taking into account the Debtor's Administrative Claims and Priority Claims, the Debtor's Liquidation Equity is $0.

Creditors should note that on a liquidation basis, full market value for assets cannot be obtained. Further, there are costs associated with a liquidation of assets that must be paid out of any sale proceeds. The liquidation analysis does not contain an estimation of any tax liability which could be associated with the liquidation. This would lessen the recovery to creditors. **Creditors should note that after Administration Claims and Priority Claims, $0 of Liquidation Equity exists for the benefit of general Unsecured Claims. Nevertheless, the Debtor is preserving the $4,446 of Liquidation Equity for his general unsecured creditors so that they are able to receive a distribution from the estate. Even if the Debtor's Administrative Claims and Priority Claims turn out to be greater than this amount, the Debtor will preserve for the benefit of his general Unsecured Claims, and will distribute the value of this Liquidation Equity to his general unsecured creditors on a pro-rata basis so that they receive a distribution from the estate.** This analysis is provided for informational purposes only, given that the Debtor's Plan does not contemplate a liquidation in this fashion. The importance of the analysis is to illustrate that even if the Debtor's estate was liquidated, values would lessen significantly and creditors would not be paid quickly. The Debtor's Plan not only calls for the commencement of immediate payments to all creditors, it also enhances the ability to pay creditors in a greater amount more quickly.

## X.     DISPOSABLE INCOME ANALYSIS

Pursuant to §1129(a)(15) of the Bankruptcy Code, the Court shall confirm the Plan only if: in a case in which the Debtor is an individual and in which the holder of an Allowed Unsecured Claim objects to the confirmation of the Plan, what the holder of such Allowed Unsecured Claim shall receive under the Plan is either (A) the value, as of the Effective Date of the Plan, of the property to be distributed under the Plan on account of such Allowed Unsecured Claim is not less than the

amount of such Allowed Unsecured Claim, or (B) the value of the property to be distributed under the Plan is not less than the projected disposable income of the Debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer. Section 1325(b)(2) defines disposable income as current monthly income received by the Debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable non-bankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

The Debtor provided a calculation of his current monthly income with his Bankruptcy Schedules. Pursuant to that statement, the Debtor's current monthly income is $7,025.00. According to the Debtor's Schedule J, which identifies the Debtor's necessary expenses, the Debtor's expenses are $8,439.00 on a monthly basis. Thus, the Debtor's disposable income is $0, and such monthly amount over five years is $0. **Accordingly, creditors should note that the amount to be disbursed to satisfy § 1129(a)(15) of the Bankruptcy Code to several Unsecured Claims is $0. The Debtor's Plan provides that the Debtor will pay his Administrative Claims and Priority Claims in full. As the Liquidation Analysis shows there is a required distribution to the Debtor's general unsecured creditors assuming the Debtor's Administrative Claims and Priority Claims are not greater than estimated. However, if these claims are greater than estimated, the Debtor is**

nonetheless committing to fund the value of his Liquidation Equity on a pro-rata basis to Allowed Unsecured Claims so that they receive a distribution from the bankruptcy estate.

## XI.    EFFECT OF CONFIRMATION

Because the Debtor is an individual, pursuant to §1141(d)(5) of the Bankruptcy Code, Confirmation of the Plan does not provide the discharge for the Debtor. The Debtor will move for the entry of a final decree after the Debtor has provided for the implementation of the Plan, and the final decree will contain the language providing the Debtor his discharge and such final decree will discharge any and all debts of the Debtor, that arose any time before the entry of the Confirmation Order, including, but not limited to, all principal and all interest accrued thereon, pursuant to §1141(d) of the Bankruptcy Code. The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtor dealt with in the Plan shall be considered New Obligations of the Debtor, and these New Obligations shall not be considered in default unless and until the Reorganized Debtor defaults on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtor and, once the Plan is confirmed, the only obligations of the Debtor shall be such New Obligations as provided for under the Plan.

## XII.    IMPLEMENTATION AND FUNDING OF DEBTOR'S PLAN

The Plan will be funded by the Debtor's post-petition earnings, and Excess Cash Flow. The Reorganized Debtor shall act as the Disbursing Agent under the Plan.

In the event any entity which possesses an Allowed Secured Claim, or any other lien in any of the Debtor's property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtor may record a copy of his Plan and the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien

release and creation of the necessary new liens to satisfy the terms of the Plan. If the Debtor deems advisable, he may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## XIII.   TAX CONSEQUENCES

Pursuant to §1125(a)(1) of the Bankruptcy Code, the Debtor is to provide a discussion of the potential material federal tax consequences of the Plan to the Debtor, any successor to the Debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the Plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether the Disclosure Statement provides adequate information, the Court shall consider the complexity of the case, the benefit of  additional information to creditors and other parties in interest, and the cost of providing additional information.

Neither the Debtor nor his lawyers can make any statements with regard to the tax consequences of the Plan on any of the creditors.  Although they would note that to the extent the creditor is not paid in full their Allowed Claim, they should consult with their tax advisor concerning the possibility of writing off for tax purposes that portion of their Allowed Claim that is not paid. Each creditor in this case, when analyzing the Plan, should consult with its own professional advisors to determine whether or not acceptance of the Plan by the creditor will result in any adverse tax consequences to the creditor.

The Bankruptcy Tax Act generally provides that the Debtor does not have to recognize income from the discharge of indebtedness.  The Plan contemplates significant discharge of indebtedness; however, because the Debtor is in bankruptcy, he will not have to recognize the discharge of indebtedness as income for tax purposes.  The Debtor does not believe the Plan will cause any adverse tax consequences.

## XIV. NON-ALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no allowed claim, whether secured, unsecured, priority, or administrative, shall include any fine, penalty, exemplary or punitive damages, late charges or other monetary charge relating to or arising from any default or breach by Debtor, and any claim on account thereof shall be deemed disallowed whether or not an objection to it is filed.

## XV. EXECUTORY CONTRACTS

Assuming the Debtor retains ownership of these properties, the Debtor assumes the leases with the tenants relating to the Clubhouse Property, Montecito Property, 78th Drive Property, 11th Place Property and 88th Drive Property, and rejects all executory contracts and unexpired leases not otherwise assumed herein or by separate order of the Court. Claims for any executory contracts or unexpired leases rejected by the Debtor shall be filed no later than 10 days after the earlier of Confirmation or the date the executory contract or unexpired lease is specifically rejected. Any such Claims not timely filed and served shall be disallowed.

## XVI. VOTING PROCEDURE

The Plan divides the Claims of Creditors and of Interest Holders into separate Classes. All Classes of Claimants are encouraged to vote; however, only the vote of holders of Claims that are impaired by the Plan will have a significant impact upon the confirmation process. Generally, this includes Creditors who, under the Plan, will receive less than payment in full of their Claims on the Effective Date of the Plan.

All Creditors entitled to vote on the Plan must cast their vote by completing, dating and signing the ballot which has been mailed to them together with the Disclosure Statement. The ballot contains instructions concerning the deadline for submitting the ballot and to what address the ballot should be mailed.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with §1125 of the Bankruptcy Code, and is provided to each person whose Claim or Interest has been scheduled by the Debtor, or who has filed a proof of claim or interest with respect to the Debtor or his property, each known equity interest holder and other parties-in-interest known to the Debtor. The Disclosure Statement is intended to assist Creditors in evaluating the Plan and in determining whether to accept the Plan. In determining acceptance of the Plan, votes of Creditors will only be counted if submitted by a Creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and liquidated, or who has timely filed with the Court a proof of claim or proof of interest.

The Bankruptcy Court will schedule a hearing to determine whether the requirements for confirmation under the Bankruptcy Code have been met and whether the Plan has been accepted by each impaired Class and by the requisite number of Creditors in such Class. Under §1126 of the Code, an impaired class is deemed to have accepted the Plan upon a favorable vote of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed Claims of Class members voting on the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that Class members will receive at least as much as they would if the Debtor were liquidated under Chapter 7 of the Code.

Even if each Class of Creditors does not accept the Plan, the Plan can be confirmed under §1129(b) of the Code, so long as one impaired Class of Creditors accepts the Plan. The failure of each Class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11, and the secured Creditors repossessing their collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured Creditors.

## XVII. MODIFICATION OF PLAN

In addition to its modification rights under §1127 of the Bankruptcy Code, the Debtor may amend or modify his Plan at any time prior to Confirmation without leave of the Court. The Debtor or the Reorganized Debtor may propose amendments and/or modifications of his Plan at any time

33

subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtor or the Reorganized Debtor may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of their Plan.

## XVIII. **CLOSING OF THE CASE**

If the Court does not close this case on its own motion, the Reorganized Debtor will move the Court to close this case once the Plan is deemed substantially consummated. Until substantial consummation, the Reorganized Debtor will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. §1930, as amended. Pursuant to 11 U.S.C. §1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## XIX. **RETENTION OF JURISDICTION**

The Court will retain jurisdiction until the Plan has been fully consummated for, including but not limited to, the following purposes:

1.      The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtor to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtor's rights to object to or to re-examine the Claim in whole or in part.

2.      To determine any Claims which are disputed by the Debtor, whether such objections are filed before or after Confirmation, to estimate any Unliquidated or Contingent Claims pursuant to 11 U.S.C. §502(c)(1) upon request of the Debtor or any holder of a Contingent or Unliquidated Claim, and to make determination on any objection to such Claim.

3.     To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtor and any other party, including but not limited to, any rights of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

4.     The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in the Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

5.     The modification of the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6.     To enforce and interpret the terms and conditions of the Plan.

7.     The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8.     The entry of an order concluding and terminating this case.

## XX.     DISCLAIMER

Court approval of this Disclosure Statement and the accompanying Plan of Reorganization, including exhibits, is not a certification of the accuracy of the contents thereof.  Furthermore, Court approval of these documents does not constitute the Court's opinion as to whether the Plan should be approved or disapproved.

## XXI.     RISKS

The risk of the Plan lies essentially with the Debtor's ability to maintain his income to make Plan payments.

# XXII.  **PROPONENTS RECOMMENDATION/ALTERNATIVES TO THE PLAN**

The Debtor recommends that all creditors entitled to vote for the Plan do so.  The alternatives to confirmation of the Plan would be either conversion of this case to a case under Chapter 7 of the Bankruptcy Code or its dismissal.

Conversion will result in the appointment of a Chapter 7 trustee and, most likely, the hiring of an attorney by the trustee.  Expenses incurred in administering the Chapter 7 case will take priority in the right to payment over allowed, administrative expenses incurred in the Chapter 11 case.  Both Chapter 7 and Chapter 11 administrative expenses take priority over the payment of unsecured claims without priority.  In other words, conversion would likely decrease the net amount available to pay currently existing creditors.  Further, a Chapter 7 proceeding would not provide the Debtor with the means to pay his Priority Claims over time.

In addition, conversion could substantially delay any distribution to creditors beyond the time period for distribution defined in the Plan.  A Chapter 7 trustee is not limited to specific deadlines for closing a case and distributing assets to creditors.  It is not unusual for distributions in Chapter 7 cases to be delayed for years.  Moreover, the return on the assets of the Estate a trustee is likely to obtain through a standard Chapter 7 liquidation could be less than the return the Plan will generate.

Dismissal of this case would leave all creditors holding unsecured claims in the position of having to institute legal proceedings to collect their debts.  Moreover, outside the context of a bankruptcy case, the first creditor to collect may collect all non-exempt property, leaving nothing to be paid to remaining creditors.  In addition, dismissal of this case would open the door for the Debtor to file a new bankruptcy case, which could further delay or reduce funds available to pay creditors.

For all these reasons, the Debtor urges you to vote to accept the Plan and to return your ballots in time to be counted.

DATED this 6th day of October, 2009.

AIKEN SCHENK HAWKINS & RICCIARDI P.C.

By _____
D. Lamar Hawkins
Chris Chicoine
4742 North 24th Street
Suite 100
Phoenix, Arizona 85016-4859
Attorneys for Debtor


_____
Shawn Burgueno, Debtor-In-Possession

COPY of the foregoing mailed or served
via (fax* or electronic notification** if so marked)
this 6th day of October, 2009, to:

U.S. TRUSTEE'S OFFICE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

Josephine E. Piranio ** jsalmon@piteduncan.com
PITE DUNCAN LLP
4375 Jutland Dr., Suite 200
San Diego, CA 92117
Attorneys for GMAC Mortgage LLC

John D. Schlotter john.schlotter@prommis.com
1544 Old Alabama Road
Roswell, Georgia 30076-2102
Attorney for: BAC Home Loans Servicing, L.P.

Mark S. Bosco msb@tblaw.com
TIFFANY & BOSCO P.A.
2525 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
Attorney for: National City Mortgage

S:\Burgueno.Shawn\2909401\Pleadings\DiscStmt.doc

37

**AIKEN SCHENK HAWKINS & RICCIARDI P.C.**
4742 North 24th Street
Suite 100
Phoenix, Arizona 85016-4859
Telephone: (602) 248-8203
Facsimile: (602) 248-8840
D. Lamar Hawkins – 013251
Philip R. Rupprecht - 009288
Christopher R. Chicoine – 025260
E-Mail: dlh@ashrlaw.com
E-Mail: prr@ashrlaw.com
E-Mail: crc@ashrlaw.com
Attorneys for Debtor

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| SHAWN BURGUENO, | Case No. 2:09-bk-10375-RJH |
| Debtor. | |
| Address: 1141 E. Tuckey Ln. Phoenix, AZ 85014 | **DEBTOR'S FIRST PLAN OF REORGANIZATION** |
| Soc.Sec.No.: xxx-xx-3030 | |

Shawn Burgueno (the "Debtor"), debtor-in-possession in the above-captioned bankruptcy estate, submits to the Court and creditors of the Debtor's estate the following Plan of Reorganization (the "Plan"), pursuant to §1121(a) of the Bankruptcy Code.

## I.     DEFINITIONS

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined have the meanings ascribed to them in Section I of the Plan.    Any term used in the Plan that is not defined in the Plan but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules.    Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

Administrative Claim:    Every cost or expense of administration in the pending case,



including, but not limited to, any actual and necessary expenses of preserving or disposing of the assets of the estate, any actual and necessary expenses incurred in operating any of the Debtor's business post-petition and all Claims approved under §507(a)(1) of the Bankruptcy Code, including professional fees and costs approved by the Court.

ADOR: The Arizona Department of Revenue.

Allowed Claim: Allowed Claim shall mean a Claim:

(a) with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 of the Rules of Bankruptcy Procedure and to which no objection to the allowance of the Claim has been filed by the Debtor or any other party or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending, or

(b) Scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), Rules of Bankruptcy Procedure, and not listed as disputed, contingent or un-liquidated as to the amount.

An Allowed Claim shall not include un-matured or post-petition interest, penalties, fees or costs, unless specifically stated in the Plan. Notwithstanding §502(a) of the Code and Rules 3001 and 3003, for the purposes of the Plan, a Claim shall not be an Allowed Claim unless it satisfies the definition of Allowed Claim under this Plan.

Allowed Interest: An Allowed Interest shall mean an Interest in the Debtor held by a person or entity, as of the Effective Date, and as to which Interest no objection has been made within the time allowed for the making of objections, or as to which such Interest is allowed by a final order, or an Interest as to which a timely and proper proof of interest has been filed, and as to which proof of interest no objection has been made within the time allowed for making objections.

Allowed Priority Claim: The Allowed Claim of a Claimant that is entitled to priority in payment under 11 U.S.C. §507(a)(2) through (a)(8).

Allowed Secured Claim: An Allowed Claim to the extent that such Allowed Claim is secured by a lien which is unavoidable, on property in which the estate has an interest, to the extent of the value of such Creditor's interest in the estate's interest in such property as determined in light of the

purpose of the valuation and of the proposed disposition and use of such property and determined as of the Petition Date.

Allowed Unsecured Claim: An Allowed Claim to the extent that such Allowed Claim is not secured by a lien on property in which the estate has an interest.

Ballot: Each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote as specified in this Plan in connection with the solicitation of acceptances of this Plan.

Bankruptcy Code: 11 U.S.C. §101 et seq.

Bankruptcy Court: The United States Bankruptcy Court for the District of Arizona or any other court which may have jurisdiction over this case or any proceeding arising under, in, or relating to this case.

Bankruptcy Rule: The Federal Rules of Bankruptcy Procedure as amended and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

Bar Date: The date, if any, designated by the Bankruptcy Court as the last date for filing Proofs of Claim or Interest against the Debtor.

Chapter 11: Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §1101, et seq.

Claim: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the date of Confirmation, or; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation, or; (c) a claim arising under 11 U.S.C. §502(g).

Claimant or Creditor: Any person or entity that asserts a Claim.

Class: A category of holders of Claims or Interests as described in this Plan.

Clubhouse Property: Real property located at 30902 Clubhouse Drive #28F, Laguna Niguel, California 92677.

Confirmation: The signing by the Court of the Confirmation Order.

3

<u>Confirmation Date</u>: The date upon which the Confirmation Order is entered upon the docket.

<u>Confirmation Hearing</u>: The hearing held by the Bankruptcy Court regarding confirmation of the Plan, as it may be continued from time to time.

<u>Confirmation Order</u>: The Order signed by the Bankruptcy Court pursuant to 11 U.S.C. §1129 confirming this Plan.

<u>Contingent Claim</u>: Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) which was not filed in a sum certain, or which has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) which has not been allowed on or before the Confirmation Date.

<u>Court</u>: The United States Bankruptcy Court for the District of Arizona, which has jurisdiction in this case.

<u>Debtor</u>: Shawn Burgueno.

<u>Disbursing Agent</u>: The Reorganized Debtor shall be the Disbursing Agent and shall make distributions to holders of Allowed Claims under the Plan.

<u>Disclosure Statement</u>: The Debtor's disclosure statement and any amendments and supplements thereto as approved by an order of the Bankruptcy Court.

<u>Disputed Claim</u>: A Claim which the Debtor listed as un-liquidated, disputed or contingent in its Schedules or to which an objection has been filed which has not been resolved by a final order of the Bankruptcy Court.

<u>Effective Date</u>: 30 days after the Confirmation Date. If 30 days after the Confirmation Date falls on a weekend or a holiday, the Effective Date will be the first business day thereafter.

<u>88th Drive Property</u>: Real property located at 4014 North 88th Drive, Phoenix, Arizona 85037.

<u>11th Place Property</u>: Real property located at 7038 North 11th Place, Phoenix, Arizona 85020.

<u>Excess Cash Flow</u>: Cash flow of the Debtor's post-petition income after deduction from his post-petition income as set forth in his Schedule I, all expenses as set forth in his Schedule J, including all payments to administrative, priority, and secured creditors.

<u>Final Order</u>: An order or judgment which has not been stayed.

4

**Impaired:** When used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Code §1124.

**Insider:** A person or entity within the definition contained at §101(31) of the Bankruptcy Code.

**IRS:** The Internal Revenue Service.

**Interest:** Any equity interest in the Debtor as of the Effective Date.

**Interest Holder:** Any person or persons owning an Interest in the Debtor as of the Effective Date.

**Maxwell Property:** Real property located at 2465 Maxwell Lane, Sedona, Arizona 86336.

**Montecito Property:** Real property located at 10407 West Montecito Avenue, Phoenix, Arizona 85037.

**New Obligations:** Those debts of the Debtor which existed pre-confirmation, but which are modified by the confirmed Plan resulting in the creation of a new note. The obligation for which the Reorganized Debtor has liability under the terms of the confirmed Plan. Said new obligations shall not be considered in default unless and until the Reorganized Debtor defaults on said obligations after the Effective Date.

**Oversecured:** The term describing the Allowed Claim of a secured Creditor when the value of the collateral securing said Allowed Claim exceeds the amount of the debt serving as the basis for said Allowed Claim.

**Person:** Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

**Petition:** The original petition under Chapter 11.

**Petition Date:** The date on which the Petition was filed, May 14, 2009.

**Plan:** This Plan of Reorganization and any amendments or supplements thereto.

**Plan Rate:** The rate of interest referred to in the Plan which is the prime rate.

**Proof of Claim:** The proof of claim that must be filed by a holder of an Impaired Claim by the Bar Date.

5

<u>Pro Rata</u>: The ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

<u>Reorganized Debtor</u>: The Debtor after the Effective Date.

<u>78th Drive Property</u>: Real property located at 20100 North 78th Drive #2033, Scottsdale, Arizona 85255.

<u>Tax Claim Rate</u>: The rate of interest, to be determined by the Bankruptcy Court at the Confirmation Hearing, that, when applied to the amount of an Allowed Priority Claim to be paid in installments will result in such installments being of an aggregate value, as of the Effective Date, equal to the Allowed amount of such Claim, consistent with the requirements of 11 U.S.C. §1129(a)(9). At the Confirmation Hearing, the Debtors will request the Court determine that the Tax Claim Rate is five percent per annum.

<u>Tuckey Lane Property</u>: Real property located at 1141 East Tuckey Lane, Phoenix, Arizona 85014.

<u>Undersecured</u>: The term describing the Allowed Claim of a secured Creditor when the value of the collateral securing said Allowed Claim is less than the debt which serves as the basis of said Allowed Claim.

<u>Voting Deadline</u>: The voting deadline for voting to accept or reject this Plan, as determined by the Bankruptcy Court.

## II.    <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>.

A.    **<u>Priority Claims: Class 1</u>**

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims).

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(7) (Tenant Claims).

Class 1-C consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8) (Tax Claims).

B.    **<u>Secured Claims: Class 2</u>**

Class 2-A consists of the Allowed Secured Claim of Maricopa County.

Class 2-B consists of the Allowed Secured Claim of Orange County.

Class 2-C consists of the Allowed Secured Claim of Yavapai County.

Class 2-D consists of the Allowed Secured Claim of GMAC Mortgage LLC ("GMAC") related to its lien on the Tuckey Lane Property.

Class 2-E consists of the Allowed Secured Claim of Wells Fargo related to its first position lien on the Clubhouse Property.

Class 2-F consists of the Allowed Secured Claim of Chase related to its second position lien on the Clubhouse Property.

Class 2-G consists of the Allowed Secured Claim of La Vista at Laguna Niguel Community Association ("La Vista") related to the Clubhouse Property.

Class 2-H consists of the Allowed Secured Claim of One West Bank FSB fka Indymac Federal Bank FSB ("Indy Mac") related to its first position lien on the Montecito Property.

Class 2-I consists of the Allowed Secured Claim of Green Tree Servicing LLC ("Green Tree") related to its second position lien on the Montecito Property.

Class 2-J consists of the Allowed Secured Claim of Wells Fargo related to its lien on the 78th Drive Property.

Class 2-K consists of the Allowed Secured Claim of Edge at Grayhawk Condominium Association ("Edge") related to the 78th Drive Property.

Class 2-L consists of the Allowed Secured Claim of Grayhawk Community Association related to the 78th Drive Property.

Class 2-M consists of the Allowed Secured Claim of National City Mortgage ("National City") related to its first position lien on the 11th Place Property.

Class 2-N consists of the Allowed Secured Claim of Bank of America related to its second position lien on the 11th Place Property.

Class 2-O consists of the Allowed Secured Claim of American Brokers Conduit/BAC Home Loans Servicing ("ABC")[1] related to its lien on the 88th Drive Property.

Class 2-P consists of the Allowed Secured Claim of Ryan's Ridge Homeowners Association/Amcor Property Professionals ("Ryan's Ridge") related to the 88th Drive Property.

---

[1] Debtor listed this creditor as Countrywide Home Loans in his Schedule D.

Class 2-Q consists of the Allowed Secured Claim of M&I Marshall & Ilsley Bank ("M&I") related to its lien on the Maxwell Property.

**C.      General Unsecured Claims: Class 3**

Class 3-A consists of the Allowed Unsecured Claims of Creditors of the Debtor.

**D.      Debtors' Interest: Class 4**

Class 4-A consists of the Allowed Interest of the Debtor.

**III.    IMPAIRMENT OF CLASSES**

Class 1-A and 1-B are unimpaired under the Plan.  All other classes are impaired, as that term is defined in 11 U.S.C. §1124.

**IV.     TREATMENT OF CLASSES**

**A.      Priority Claims: Class 1**

**1.      Administrative Claims: 1-A**

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims) related to the Debtor.  Unless they agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court.  Any Class 1-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.  The Allowed Administrative Claim of counsel for the Debtor that has not been paid as of the Effective Date, shall be paid in monthly payments of principal and interest, with interest at 8%, until paid in full.

**2.      Tenant Claims: 1-B**

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(7) relating to tenant security deposits, which includes:  unsecured claims of individuals, to the extent of $2,425.00 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property…for the personal, family, or household use of such individuals, that were not delivered or provided.  The Clubhouse Property is leased to David Brooks; the Montecito Property is leased to Darlene Montes; the 78th Drive Property

is leased to Gregory Silva. To the extent that the Debtor retains a property and any tenant has provided the Debtor a deposit relating to the lease of any real property that falls within the $2,425.00 debt limitations, the tenant's deposit rights shall be preserved and the Debtor shall perform and act with the deposit in accordance with the terms of the pre-petition lease. Any deposit that exceeds the $2,425.00 dollar limitation or definitional limitations set forth in 11 U.S.C. §507(a)(7) shall be treated as a general unsecured claim under Class 3-A.

### 3. Tax Claims: 1-C

Class 1-C consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8)-tax claims. The Debtor does not anticipate that any Claims will exist in this Class. As provided in 11 U.S.C. §1129(a)(9)(C), unless they agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-C shall be paid in full, in cash, in regular installment payments of a total value, as of the Effective Date of the Plan, equal to the Allowed Priority Claim, over a period ending five (5) years after the Petition Date, and in a manner that is not less favorable than the most favored non-priority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under §1122(b)). Any Allowed Priority Claims will receive interest at the Tax Claim Rate. Any Class 1-C Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.

### B. Secured Claims: Class 2

#### 1. Maricopa County: Class 2-A

This Class consists of the Allowed Secured Claim held by Maricopa County for real property taxes owing on the Debtor's 78th Drive Property as of the Effective Date. Maricopa County filed a Proof of Claim in the amount of $2,142.06 representing 2008 real property taxes owing for the 78th Drive Property. Maricopa County will retain its lien on the 78th Drive Property, and any of the Debtor's other real properties located in Maricopa County, if applicable, and will be paid its Allowed Secured Claim as follows:

The Debtor's Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtor will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be

given stay relief and they can then foreclose on the property or the Debtor will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtor retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtor shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtor may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtor will have no further liability for these taxes upon the foreclosure by the secured creditor.

### 2. Orange County: Class 2-B

This Class consists of the Allowed Secured Claim held by Orange County for real property taxes owing on the Debtor's Clubhouse Property as of the Effective Date. Orange County filed a Proof of Claim in the amount of $4,590.00 representing 2009 estimated real property taxes for the Clubhouse Property. Orange County will retain its liens on Clubhouse Property and will be paid its Allowed Secured Claim as follows:

The Debtor's Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtor will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtor will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtor retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtor shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable

pursuant to state law, and (d) the Reorganized Debtor may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtor will have no further liability for these taxes upon the foreclosure by the secured creditor.

### 3. Yavapai County: Class 2-C

This Class consists of the Allowed Secured Claim held by Yavapai County for real property taxes owing on the Debtor's Maxwell Property as of the Effective Date. Yavapai County filed a Proof of Claim in the amount of $746.11 representing 2008 real property taxes for the Maxwell Property. Yavapai County will retain its liens on Maxwell Property and will be paid its Allowed Secured Claim as follows:

The Debtor's Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtor will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtor will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtor retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtor shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtor may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtor will have no further liability for these taxes upon the foreclosure by the secured creditor.

### 4. GMAC: Class 2-D

This Class consists of the Allowed Secured Claim held by GMAC, as to its first position secured interest in the Tuckey Lane Property. The Debtor anticipates that he will reach a stipulation with GMAC as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. GMAC filed a secured proof of claim in the amount of $484,121.39. The Debtor asserts that GMAC's Claim is in first position on the Tuckey Lane Property junior only to real property taxes. The Debtor believes the current value of the Tuckey Lane Property is $300,000.00 based upon the current market and comparative sales. GMAC's Allowed Secured Claim shall be allowed at the value of the Tuckey Lane Property minus all secured debt that is senior to GMAC's lien position. As a result, GMAC's Allowed Secured Claim is $300,000.00 ($300,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. GMAC shall release its lien in the Tuckey Lane Property once its Allowed Secured Claim has been paid. The Debtor may sell the Tuckey Lane Property at any time without penalty so long as the balance owing on GMAC's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of GMAC's Allowed Claim shall be treated in accordance with Class 3-A.

**5.      Wells Fargo:  Class 2-E**

This Class consists of the Allowed Secured Claim held by Wells Fargo, as to its first position secured interest in the Clubhouse Property. The Debtor anticipates that he will reach a stipulation with Wells Fargo concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the

stipulation control. Wells Fargo filed a secured proof of claim in the amount of $370,967.65. The Debtor asserts that Wells Fargo's Claim is in first position on the Clubhouse Property junior only to real property taxes. Wells Fargo shall retain its lien on the Clubhouse Property. Wells Fargo's Allowed Secured Claim shall be allowed at the value of the Clubhouse Property minus all secured debt that is senior to Wells Fargo's lien position. The Debtor believes the current value of the Clubhouse Property is $190,000.00 based upon the current market and comparative sales. As a result, Wells Fargo's Allowed Secured Claim is $185,410.00 ($190,000.00 value minus $4,590.00 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. EMC shall release its lien in the Coral Reef Property once its Allowed Secured Claim has been paid. The Debtor may sell the Coral Reef Property at any time without penalty so long as the balance owing on EMC's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of EMC's Allowed Claim shall be treated in accordance with Class 3-A.

### 6. Chase: Class 2-F

This Class consists of the Allowed Secured Claim held by Chase as to its second position secured interest in the Clubhouse Property. The Debtor anticipates that he will reach a stipulation with Chase concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Chase filed a secured proof of claim in the amount of $104,284.49. The Debtor asserts that Chase's Claim is in second position on the Clubhouse Property junior to real property taxes and Wells Fargo. The Debtor believes the current value of the Clubhouse Property is $190,000.00 based upon the current market and comparative sales. Chase's Allowed Secured Claim shall be allowed at the value of the Clubhouse Property minus all senior secured claims. As a result, Chase's Allowed Secured

Claim is $0.00 ($190,000.00 value minus $4,590.00 owing in real property taxes minus Wells Fargo's Allowed Secured Claim of $185,410.00). Chase shall immediately release its lien on the Clubhouse Property on the Effective Date. The balance of Chase's Allowed Claim shall be treated in accordance with Class 3-A.

### 7. La Vista at Laguna Niguel Community Association: Class 2-G

This Class consists of the Allowed Claim held by Laguna Niguel Community Association ("La Vista") as to its secured interest in the Clubhouse Property for HOA fees. The Debtor anticipates that he will reach a stipulation with La Vista concerning the treatment of its Allowed Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. La Vista has not filed a proof of claim. La Vista's Allowed Claim shall only consist of HOA dues and assessments and shall not contain any penalties, fees, or attorneys fees. In the event of any dispute as to the amount of La Vista's Allowed Claim, the Debtor will file an objection to the proof of claim. Assuming the Debtor retains ownership of the Clubhouse Property, La Vista's Allowed Claim shall be paid in equal monthly payments, without interest, paid over 6 months. The balance of La Vista's Allowed Claim, if any, shall be treated in accordance with Class 3-A.

### 8. Indy Mac: Class 2-H

This Class consists of the Allowed Secured Claim held by One West Bank FSB fka Indymac Federal Bank FSB ("Indy Mac"), as to its first position secured interest in the Montecito Property. The Debtor anticipates that he will reach a stipulation with Indy Mac concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Indy Mac filed a secured proof of claim in the amount of $130,688.01. The Debtor asserts that Indy Mac's Claim is in first position on the Montecito Property junior only to real property taxes. Indy Mac shall retain its lien on the Montecito Property. Indy Mac's Allowed Secured Claim shall be allowed at the value of the Montecito Property minus all secured debt that is senior to Indy Mac's lien position. The Debtor believes the current value of the Montecito Property is $70,000.00 based upon the current market and comparative sales.

14

As a result, Indy Mac's Allowed Secured Claim is $70,000.00 ($70,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Indy Mac shall release its lien in the Montecito Property once its Allowed Secured Claim has been paid. The Debtor may sell the Montecito Property at any time without penalty so long as the balance owing on Indy Mac's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Indy Mac's Allowed Claim shall be treated in accordance with Class 3-A.

### 9. Green Tree: Class 2-I

This Class consists of the Allowed Secured Claim held by Green Tree Servicing LLC ("Green Tree") as to its second position secured interest in the Montecito Property. The Debtor anticipates that he will reach a stipulation with Green Tree concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P. ("BAC") filed a secured proof of claim in the amount of $16,200.00. On September 24, 2009, BAC filed a Notice of Transfer of Claim Other Than for Security transferring its claim to Green Tree Servicing, LLC. The Debtor asserts that Green Tree's Claim is in second position on the Montecito Property junior to real property taxes and Indy Mac. The Debtor believes the current value of the Montecito Property is $70,000.00 based upon the current market and comparative sales. Green Tree's Allowed Secured Claim shall be allowed at the value of the Montecito Property minus all secured debt that is senior to Green Tree's lien position. As a result, Green Tree's Allowed Secured Claim is $0.00 ($70,000.00 value minus $0 owing in real property taxes minus Indy Mac's Allowed Secured Claim of $70,000.00). Green Tree shall immediately release its lien on the Montecito

Property on the Effective Date. The balance of Green Tree's Allowed Claim shall be treated in accordance with Class 3-A.

### 10. Wells Fargo: Class 2-J

This Class consists of the Allowed Secured Claim held by Wells Fargo, as to its first position secured interest in the 78th Drive Property. The Debtor anticipates that he will reach a stipulation with Wells Fargo's concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Wells Fargo filed a secured proof of claim in the amount of $251,576.14. The Debtor asserts that Wells Fargo's Claim is in first position on the 78th Drive Property junior only to real property taxes. Wells Fargo shall retain its lien on the 78th Drive Property. Wells Fargo's Allowed Secured Claim shall be allowed at the value of the 78th Drive Property minus all secured debt that is senior to Wells Fargo's lien position. The Debtor believes the current value of the 78th Drive Property is $50,000.00 based upon the current market and comparative sales. As a result, Wells Fargo's Allowed Secured Claim is $47,857.94 ($50,000.00 value minus $2,142.06 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Wells Fargo shall release its lien in the 78th Drive Property once its Allowed Secured Claim has been paid. The Debtor may sell the 78th Drive Property at any time without penalty so long as the balance owing on Wells Fargo's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Wells Fargo's Allowed Claim shall be treated in accordance with Class 3-A.

### 11. Edge at Grayhawk Condominium Association: Class 2-K

This Class consists of the Allowed Claim held by Edge at Grayhawk Condominium Association ("Edge") as to its secured interest in the 78th Drive Property for HOA fees. The Debtor

anticipates that he will reach a stipulation with Edge concerning the treatment of its Allowed Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Edge has not filed a proof of claim. Edge's Allowed Claim shall only consist of HOA dues and assessments and shall not contain any penalties, fees, or attorneys fees. In the event of any dispute as to the amount of Edge's Allowed Claim, the Debtor will file an objection to the proof of claim. Assuming the Debtor retains ownership of the 78th Drive Property, Edge's Allowed Claim shall be paid in equal monthly payments, without interest, paid over 6 months. The balance of Edge's Allowed Claim, if any, shall be treated in accordance with Class 3-A.

## 12.    Grayhawk Community Association:  Class 2-L

This Class consists of the Allowed Claim held by Grayhawk Community Association ("Grayhawk") as to its secured interest in the 78th Drive Property for HOA fees. The Debtor anticipates that he will reach a stipulation with Grayhawk concerning the treatment of its Allowed Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Grayhawk has not filed a proof of claim. Grayhawk's Allowed Claim shall only consist of HOA dues and assessments and shall not contain any penalties, fees, or attorneys fees. In the event of any dispute as to the amount of Grayhawk's Allowed Claim, the Debtor will file an objection to the proof of claim. Assuming the Debtor retains ownership of the 78th Drive Property, Grayhawk's Allowed Claim shall be paid in equal monthly payments, without interest, paid over 6 months. The balance of Grayhawk's Allowed Claim, if any, shall be treated in accordance with Class 3-A.

## 13.    National City:  Class 2-M

This Class consists of the Allowed Secured Claim held by National City, as to its first position secured interest in the 11th Place Property. The Debtor anticipates that he will reach a stipulation with National City concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. National City filed a secured proof of claim in the amount of $147,735.69. The

Debtor asserts that National City's Claim is in first position on the 11th Place Property junior only to real property taxes. National City shall retain its lien on the 11th Place Property. National City's Allowed Secured Claim shall be allowed at the value of the 11th Place Property minus all secured debt that is senior to National City's lien position. The Debtor believes the current value of the 11th Place Property is $95,000.00 based upon the current market and comparative sales. As a result, National City's Allowed Secured Claim is $95,000.00 ($95,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. National City shall release its lien in the 11th Place Property once its Allowed Secured Claim has been paid. The Debtor may sell the 11th Place Property at any time without penalty so long as the balance owing on National City's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of National City's Allowed Claim shall be treated in accordance with Class 3-A.

**14.    Bank of America:  Class 2-N**

This Class consists of the Allowed Secured Claim held by Bank of America as to its second position secured interest in the 11th Place Property. The Debtor anticipates that he will reach a stipulation with Bank of America concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Bank of America filed a secured proof of claim in the amount of $49,873.25. The Debtor asserts that Bank of America's Claim is in second position on the 11th Place Property junior to real property taxes and National City. The Debtor believes the current value of the 11th Place Property is $95,000.00 based upon the current market and comparative sales. Bank of America's Allowed Secured Claim shall be allowed at the value of the 11th Place Property minus all secured debt that is senior to Bank of America's lien position. As a result, Bank of America's Allowed Secured Claim is

$0.00 ($95,000.00 value minus $0 owing in real property taxes minus National City's Allowed Secured Claim of $95,000.00). Bank of America shall immediately release its lien on the 11th Place Property on the Effective Date. The balance of Bank of America's Allowed Claim shall be treated in accordance with Class 3-A.

## 15.  **ABC:  Class 2-O**

This Class consists of the Allowed Secured Claim held by American Brokers Conduit/BAC Home Loans Servicing ("ABC")[2], as to its first position secured interest in the 88th Drive Property. The Debtor anticipates that he will reach a stipulation with ABC concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. ABC filed a secured proof of claim in the amount of $139,458.52. The Debtor asserts that ABC's Claim is in first position on the 88th Drive Property junior only to real property taxes. ABC shall retain its lien on the 88th Drive Property. ABC's Allowed Secured Claim shall be allowed at the value of the 88th Drive Property minus all secured debt that is senior to ABC's lien position. The Debtor believes the current value of the 88th Drive Property is $40,000.00 based upon the current market and comparative sales. As a result, ABC's Allowed Secured Claim is $40,000.00 ($40,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. ABC shall release its lien in the 88th Drive Property once its Allowed Secured Claim has been paid. The Debtor may sell the 88th Drive Property at any time without penalty so long as the balance owing on ABC's

---

[2] Debtor listed this creditor as Countrywide Home Loans in his Schedule D.

Allowed Secured Claim is satisfied out of the sale proceeds. The balance of ABC's Allowed Claim shall be treated in accordance with Class 3-A.

### 16. Ryan's Ridge: Class 2-P

This Class consists of the Allowed Claim held by Ryan's Ridge Homeowners Association/Amcor Property Professionals ("Ryan's Ridge) as to its secured interest in the 88th Drive Property for HOA fees. The Debtor anticipates that he will reach a stipulation with Ryan's Ridge concerning the treatment of its Allowed Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Ryan's Ridge filed a secured proof of claim in the amount of $154.00. Ryan's Ridge's Allowed Claim shall only consist of HOA dues and assessments and shall not contain any penalties, fees, or attorneys fees. In the event of any dispute as to the amount of Ryan's Ridge's Allowed Claim, the Debtor will file an objection to the proof of claim. Assuming the Debtor retains ownership of the 88th Drive Property, Ryan's Ridge's Allowed Claim shall be paid in equal monthly payments, without interest, paid over 6 months. The balance of Ryan's Ridge's Allowed Claim, if any, shall be treated in accordance with Class 3-A.

### 17. M&I: Class 2-Q

This Class consists of the Allowed Secured Claim held by M&I, as to its first position secured interest in the Maxwell Property. The Debtor anticipates that he will reach a stipulation with M&I concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. M&I filed a secured proof of claim in the amount of $120,426.00. The Debtor asserts that M&I's Claim is in first position on the Maxwell Property junior only to real property taxes. M&I shall retain its lien on the Maxwell Property. M&I's Allowed Secured Claim shall be allowed at the value of the Maxwell Property minus all secured debt that is senior to M&I's lien position. The Debtor believes the current value of the Maxwell Property is $75,000.00 based upon the current market and comparative sales. As a result, M&I's Allowed Secured Claim is $74,253.89 ($75,000.00 value minus $746.11 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal

and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. M&I shall release its lien in the Maxwell Property once its Allowed Secured Claim has been paid. The Debtor may sell the Maxwell Property at any time without penalty so long as the balance owing on M&I's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of M&I's Allowed Claim shall be treated in accordance with Class 3-A.

**C.    Unsecured Claims: Class 3**

      **1.    General Unsecured Claims:  Class 3-A**

Class 3-A consists of the Allowed Unsecured Claims of Creditors. Class 3-A Creditors shall be paid a pro-rata share from the Debtor's Excess Cash Flow, on a quarterly basis, in an amount sufficient to fund the value of the Debtor's Liquidation Equity (as calculated in the Debtor's Disclosure Statement). Any Allowed Unsecured Claims that are determined to be non-dischargeable will continue to receive a pro-rata distribution of the Excess Cash Flow after all senior Allowed Claims have been paid, until satisfied in full.

**D.    Debtors' Interest: Class 4**

      **1.    Debtors Interest:  Class 4-A**

Pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, the Debtor shall retain his interest in all estate property in consideration of his funding of Allowed Claims and shall receive all exempt property.

**V.    MEANS FOR EXECUTING THE PLAN**

**A.    Funding**

Pursuant to §1123(a)(8) of the Bankruptcy Code, the Debtor shall provide for the payment to creditors under the Plan of all or such portion of earnings from personal services performed by the Debtor after the commencement of the case or other future income of the Debtor as is necessary for the execution of the Plan. The Debtor will contribute his Excess Cash Flow in an amount sufficient to fund the value of his Liquidation Equity.

**B. Liquidation of Estate Property.**

The Debtor shall have the authority to retain such brokers, agents, counsel, or representatives, as he deems necessary to liquidate all assets of the bankruptcy estate. Prior to Confirmation, the Debtor shall sell his property pursuant to an order of the Bankruptcy Court to the highest and best bidder. Any sales which occur post-confirmation shall not require approval of the Bankruptcy Court for the sale, although the Debtor will be free to seek such order if it deems appropriate.

**C. Management**

The Reorganized Debtor will continue to operate under the same management structure utilized prior to Confirmation.

**D. Disbursing Agent.**

The Reorganized Debtor shall act as the Disbursing Agent under the Plan.

**E. Documentation of Plan Implementation.**

In the event any entity which possesses an Allowed Secured Claim or any other lien in any of the Debtor's property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtor may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan. If the Debtor deems advisable, he may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## VI. EFFECT OF CONFIRMATION

Because the Debtor is an individual, pursuant to § 1141(d)(5) of the Bankruptcy Code, Confirmation of the Plan does not provide the discharge for the Debtor. The Debtor will move for the entry of a final decree after the Debtor has provided for the implementation of the Plan, and the final decree will contain the language providing the Debtor his discharge and such final decree will discharge any and all debts of the Debtor, that arose any time before the entry of the Confirmation Order, including, but not limited to, all principal and all interest accrued thereon, pursuant to § 1141(d) of the Bankruptcy Code. The discharge shall be effective as to each Claim, regardless of

whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtor dealt with in this Plan shall be considered New Obligations of the Debtor, and these New Obligations shall not be considered in default unless and until the Reorganized Debtor defaults on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtor and, once the Plan is confirmed, the only obligations of the Debtor shall be such New Obligations as provided for under the Plan.

## VII. OBJECTIONS TO AND ESTIMATIONS OF CLAIMS

### A. Objections and Bar Date for Filing Objections.

As soon as practicable, but in no event later than 120 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the Debtor and the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules. Objections filed after such date will be barred.

### B. Settlement of Claims.

Settlement of any objection to a Claim not exceeding $10,000 shall be permitted on the eleventh (11th) day after notice of the settlement has been provided to the Debtor, the Creditors, the settling party, and other persons specifically requesting such notice, and if on such date there is no written objection filed, such settlement shall be deemed approved. In the event of a written objection to the settlement, the settlement must be approved by the Court on notice to the objecting party.

### C. Estimation of Claims.

For purposes of making distributions provided for under the Plan, all Claims objected to shall be estimated by the Disbursing Agent at an amount equal to (i) the amount, if any, determined by the Court pursuant to §502(c) of the Bankruptcy Code as an estimate for distribution purposes; (ii) an amount agreed to between the Debtor and the Claimant; or, (iii) that amount set forth as an estimate in the Plan or Disclosure Statement. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any Claim until such Claim is an Allowed Claim.

### D. Unclaimed Funds and Interest.

Distribution to Claimants shall be mailed by the Reorganized Debtor to the Claimants at the address appearing on the master mailing matrix unless the Claimant provides the Reorganized Debtor with an alternative address. For a period of one year from the date that a distribution was to be made by the disbursing agent but has gone uncollected by the Claimant, the disbursing agent shall retain any distributions otherwise distributable hereunder which remain unclaimed or as to which the disbursing agent has not received documents required pursuant to the Plan. Thereafter, the unclaimed funds shall revest in the Reorganized Debtor.

## VIII. **NONALLOWANCE OF PENALTIES AND FINES**

No distribution shall be made under this Plan on account of, and no other Allowed Claim, whether secured, unsecured, administrative, or priority, shall include any fine, penalty, exemplary or punitive damages, late charges, default interest or other monetary charges relating to or arising from any default or breach by the Debtor, and any Claim on account thereof shall be deemed disallowed, whether or not an objection was filed to it.

## IX. **CLOSING OF CASE**

Until this case is officially closed, the Reorganized Debtor will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. §1930, as amended. Pursuant to 11 U.S.C. §1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## X. **MODIFICATION OF THE PLAN**

In addition to their modification rights under §1127 of the Bankruptcy Code, the Debtor may amend or modify this Plan at any time prior to Confirmation without leave of the Court. The Debtor may propose amendments and/or modifications of this Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtor may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of this Plan.

## XI. **JURISDICTION OF THE COURT**

The Court will retain jurisdiction until this Plan has been fully consummated for including, but not limited to, the following purposes:

1.     The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtor to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtor's rights to object to or to re-examine the Claim in whole or in part.

2.     To determine any Claims which are disputed by the Debtor, whether such objections are filed before or after Confirmation, to estimate any Unliquidated or Contingent Claims pursuant to 11 U.S.C. §502(c)(1) upon request of the Debtor or any holder of a Contingent or Unliquidated Claim, and to make determination on any objection to such Claim.

3.     To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtor and any other party, including but not limited to, any rights of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

4.     The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in this Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan.

5.     The modification of this Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6.     To enforce and interpret the terms and conditions of this Plan.

7.     The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8.     The entry of an order concluding and terminating this case.

## XII.   RETENTION AND ENFORCEMENT OF CLAIMS

Pursuant to §1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor, except those claims specifically waived herein.

## XIII.  EXECUTORY CONTRACTS

Assuming the Debtor retains ownership of the related property, the Debtor assumes the leases with the tenants relating to the 88th Drive Property, Montecito Property, 11th Place Property, Clubhouse Property and 78th Drive Property (and if the Debtor does not retain ownership then the Debtor rejects the lease of the related property), and rejects all executory contracts and unexpired leases not otherwise assumed herein or by separate order of the Court. Claims for any executory contracts or unexpired leases rejected by the Debtor shall be filed no later than 10 days after the earlier of Confirmation or the date the executory contract or unexpired lease is specifically rejected.  Any such Claims not timely filed and served shall be disallowed.

## XIV.  REVESTING

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtor shall be vested with all the property of the estate free and clear of all claims, liens, charges, and other interests of Creditors, arising prior to the Effective Date.  Upon the Effective Date, the Reorganized Debtor shall operate his business free of any restrictions.

DATED this _____ day of _____, 2009.

AIKEN SCHENK HAWKINS & RICCIARDI P.C.

By _____
    D. Lamar Hawkins
    4742 North 24th Street
    Suite 100
    Phoenix, Arizona 85016-4859
    Attorneys for Debtor

_____
Shawn Burgueno, Debtor-In-Possession

COPY of the foregoing mailed or served
via (fax* or electronic notification** if so marked)
this ___ day of October, 2009, to:

U.S. TRUSTEE'S OFFICE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

Josephine E. Piranio ** jsalmon@piteduncan.com
PITE DUNCAN LLP
4375 Jutland Dr., Suite 200
San Diego, CA 92117

Attorneys for GMAC Mortgage LLC

John D. Schlotter john.schlotter@prommis.com
1544 Old Alabama Road
Roswell, Georgia 30076-2102
Attorney for: BAC Home Loans Servicing, L.P.

Mark S. Bosco msb@tblaw.com
TIFFANY & BOSCO P.A.
2525 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
Attorney for: National City Mortgage

S:\Burgueno.Shawn\2909401\Pleadings\Plan.doc

27

| | | Scheduled Amount | Scheduled as Unknown/ Not Scheduled | Late Filed | C/U/D | POC Amount | Comments |
|---|---|---|---|---|---|---|---|
| Shawn Burgueno | | | | | | | |
| Chapter 11 No. 09-10375-RJH | | | | | | | |
| Claims Bar Date: June 30, 2009 | | | | | | | |
| Claims Analysis | | | | | | | |
| Claim No | Creditor | | | | | | |
| | **Secured Creditors:** | | | | | | |
| 15 | Amcor/Ryan's Ridge HOA | | | Late Filed | | $ 154.00 | 4014 N. 88th Dr., Phoenix, AZ |
| 5 | Bank of America | $ 49,843.00 | | | | $ 49,873.25 | 7038 N. 11th Pl., Phoenix, AZ |
| 4 | Chase | $ 104,505.00 | | | | $ 104,284.49 | 30902 Clubhouse Dr. #28F, Laguna Nigel, CA |
| 16 | Countrywide Home Loans/BAC | $ 16,200.00 | | | | $ 16,200.00 | 10407 W. Montecito Ave., Phoenix, AZ |
| 12 | American Brokers Conduit/BAC | $ 138,374.00 | | Late Filed | | $ 139,458.52 | 4014 N. 88th Dr., Phoenix, AZ; Countrywide |
| | Edge at Grayhawk Condominium Assoc | | Notice Only | | | | |
| 13 | GMAC Mortgage LLC | $ 448,000.00 | | Late Filed | | $ 484,121.39 | 1141 E. Tuckey Ln., Phoenix, AZ |
| | Grayhawk Community Assoc. | | Notice Only | | | | |
| 6, 9 | Indy Mac Federal Bank | $ 129,516.00 | | | | $ 130,688.01 | 10407 W. Montecito Ave., Phoenix, AZ |
| | La Vista at Laguna Niguel Comm Assoc | | Notice Only | | | | |
| 14 | M&I Marshall & Ilsley | $ 119,549.00 | | Late Filed | | $ 120,426.00 | 2465 Maxwell Ln., Sedona, AZ |
| 7 | Maricopa County Treasurer | | Notice Only | | | $ 2,142.06 | Edge at Grayhawk Condo |
| 2 | National City Mortgage | $ 147,736.00 | | | | $ 147,735.69 | 7038 N. 11th Pl., Phoenix, AZ |
| | Orange County Treasurer | | Notice Only | | | $ 4,590.00 | Claim not filed with Court |
| 8, 10 | Wells Fargo | $ 360,021.00 | | Late Filed | | $ 370,967.65 | 30902 Clubhouse Dr. #28, Laguna Nigel, CA |
| 11 | Wells Fargo | $ 250,000.00 | | Late Filed | | $ 251,576.14 | 20100 N. 78th St. #2033, Scottsdale, AZ |
| 1 | Yavapai County Assessor | | Notice Only | | | $ 746.11 | |
| | **Total Secured:** | **1,763,744.00** | | | | | |
| | | | | | | | |
| | **Priority Creditors:** | | | | | | |
| | Linda Berggren | $ 500.00 | | | | | Security Deposit |
| | Patricia Johnson | $ 899.00 | | | | | Security Deposit |
| | Darlene Montes | $ 1,050.00 | | | | | Security Deposit |
| | Gregory Silva | $ 250.00 | | | | | Security Deposit |
| | AZ Dept. of Revenue | | | | | | |
| 17 | IRS | | | | | $ 328.64 | Late filed; estimated 2008 taxes |
| | **Total Priority:** | $ 2,699.00 | | | | | |
| | | | | | | | |
| | **Unsecured Creditors:** | | | | | | |
| 15 | Amcor Property Professionals | | Notice Only | Late Filed | | $ 100.00 | aka Ryan's Ridge HOA |
| | Bank of America | | | | C/U | | x2710; Personally Guaranteed Credit Card |
| | M&I Marshall & Ilsley | $ 24,998.00 | | | C/U | | x10000; Personally Guaranteed Business LOC |
| | M&I Marshall & Ilsley | Unknown | | | C/U | | x0001; Potential claim re: 2nd Mortgage Settlmt |
| | RC Willey | Unknown | | | | | x6077 |
| | Sea Breeze | | Notice Only | | | | |
| | US Capital Mortgage | | Notice Only | | | | |
| 3 | Winsor & Marco PC | Unknown | | | C/U | $ 1,282.23 | |
| | | | | | | | |
| | **Total Unsecured:** | $ 39,910.00 | | | | | |

EXHIBIT "B"